1 **WO**
2
3
4
5
6 IN THE UNITED STATES DISTRICT COURT
7 FOR THE DISTRICT OF ARIZONA
8

UNITED STATES OF AMERICA,  )
        Plaintiff,  )
        )  No. CR 10-1032-TUC-CKJ
vs.  )
        )
MOSES SHEPARD,  )  **ORDER**
        )
        Defendant.  )

Pending before the Court are the Motion Renewing Motion for Judgment of Acquittal (Doc. 737) and the Motion for New Trial (Doc. 738) filed by Moses Shepard ("Shepard"). Shepard adopted these motions in a February 21, 2012, Notice (Doc. 751). Additionally, the Court has previously determined that it will treat Shepard's Motion to Arrest Judgement Pursuant to Rule 34(a)(102) F.R.C.P., Post Trial (Doc. 763) as a Supplement to the Motion Renewing Motion for Judgment of Acquittal. The government has filed responses (Docs. 755 and 756).

Shepard has also filed a Supplemental Reply Supporting Renewed Motion for Judgment of Acquittal by FPDs (Doc.786), a Reply Supporting Renewed Acquittal Motion Judgment Provisional in Need of Transcript (Docs. 787, 792, 793, 795), a Reply Supporting New Trial Motion & Motion to Stay Pending Review of Trial Transcript (Doc. 790),[1] a

---

[1]The Court has previously addressed the Motion to Stay Pending Review of Trial Transcript portion of this document.

Motion Supplement Supporting Adoption of FPD Renewed Acquittal Judgment or New Trial (Doc. 794), a Supplement to Renewed Acquittal Motion Due to Gross Judicial Misconduct (Doc. 799), a Supplement to Renewed Acquittal Motion Re: Intent of Accused in Both Counts (Doc. 800), a Notice of Pro Se Analysis of Transcripts Sent by Court Re: Acquittal or New Trial (Doc. 805), a Grounds for Re-trial Overturned Verdict (Doc. 814-1), an Outline for Acquittal or New Trial Hearing Set for 4/30/12 Before DJ CKJ (Doc. 815), a Structure of Acquittal or New Trial Hearing Presentation of Defense (Doc. 815). a Notice of Errata - Defendant *Pro Se*'s Supplement Re: FPD New Trial Motion Memorializing 9th Circuit Draft Appeal (Dkt. 814), and a Supplemental Pro-Se Analysis of Court-Supplied Trial Transcripts - Part Two (Doc. 817). Additionally, Shepard provided a Supplement to Response to FPD Motion to Withdraw as Advisory/Standby Etc Counsel and an Argument Summation for Acquittal or New Trial Hearing with Exhibits Attached.[2]

Advisory/standby counsel have also filed a Reply to Government's Response to Motion Renewing Motion for Judgment of Acquittal (Doc. 806) and a Reply to Government's Response to Motion for New Trial (Doc. 808).

*Motion Renewing Motion for Judgment of Acquittal*[3]

Fed.R.CrimP. 29(c) (1) provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court

---

[2]These documents will be docketed by the Clerk of the Court.

[3]Shepard asserts in his Motion to Arrest Judgment that, because the indictment does not charge an offense and the Court does not have jurisdiction of the charged offenses, the judgment must be arrested. A motion to arrest judgment is to be made "within 14 days after the court accepts a verdict or finding of guilty[.]" Fed.R.Crim.P. 34(b). Although the motion is untimely under Fed.R.Crim.P. 34, the Court accepts the motion as a supplement to the Motion Renewing Motion for Judgment of Acquittal because Fed.R.Crim.P. 12(b)(3)(B) permits such arguments to be made while a case is pending.

- 2 -

1  discharges the jury, whichever is later."[4]  A court is to view the evidence in the light most
2  favorable to the prosecution and evaluate whether any rational juror could have concluded
3  that the elements of the crimes were proved beyond a reasonable doubt. *See United States*
4  *v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). The government need not provide
5  direct evidence of all elements of the crime; circumstantial evidence and reasonable
6  inferences drawn therefrom can be sufficient to sustain a conviction. *United States v.*
7  *Cordova Barajas*, 360 F.3d 1037 (9th Cir. 2004); *United States v. Reyes-Alvarado*, 963 F.2d
8  1184, 1188 (9th Cir.1992). Moreover, in determining whether to grant a Rule 29 motion, the
9  court "must bear in mind that 'it is the exclusive function of the jury to determine the
10 credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from
11 proven facts.'" *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978), *quoting United*
12 *States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977).

However, while a reviewing court must initially "construe all evidence in favor of the government, the evidence so construed may still be so supportive of innocence that no rational juror could conclude that the government proved its case beyond a reasonable doubt." *United States v Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (*en banc*). Furthermore, in reviewing sufficiency of the evidence, evidence that has been admitted for a limited purpose is restricted to its purpose. *Lockhardt v. Nelson*, 488 U.S. 33, 40-42 (1988); *United States v. Tran*, 568 F.3d 1156, 1166 (9th Cir. 2009).

Initially, regarding venue challenges, the Court recognizes that West Hartford, Connecticut, Police Officer David Michael ("Officer Michael") testified that, at least in part, actions of Shepard regarding the charged offenses occurred in Tucson, Arizona. Reporter's Transcript ("TR") 1/18/12, p. 213. He further testified that items of evidentiary value to the charged offenses were found in a search of Shepard's residence in Tucson, Arizona. Additionally, testimony was presented regarding the conduct and correspondence of Shepard

---

[4] The defense motion references a 7 day time period to file the motion. The rule was amended in 2009, however, to expand the filing period to 14 days. Fed.R.Crim.P. 29, Committee Notes. The Court finds the motion was timely filed.

- 3 -

in Arizona. *See e.g.* TR 1/17/2012, p. 65; TR 1/19/2012, pp. 34, 48, 60.

In Count One, Shepard was charged as follows:

> From on or about August 6, 2009, though April 13, 2010, at or near Tucson, in the District of Arizona, MOSES ANTONIO SHEPARD, with the intent to harass, [] and cause substantial emotion[al] distress to Linda Mari Arnaud, a person in another State, did use the mail, any interactive computer service, and any facility of interstate or foreign commerce to engage in a course of conduct that caused substantial emotional distress to Linda Mari Arnaud, to wit, MOSES ANTONIO SHEPARD repeatedly contacted Linda Mari Arnaud by means of electronic mail; in violation of Title 18, United States Code, Sections 2261A(2)(A) and 2261(b)(5) and (b)(6).

Indictment, Doc. 22, p. 1.[5] As the jury was instructed, the elements of stalking as alleged in Count One requires proof beyond a reasonable doubt of the following elements:

> First, that at the time of the acts charged in the indictment, Linda Mari Arnaud and Defendant were in different states;
>
> Second, that the Defendant used the mail, any interactive computer service, or any facility of interstate or foreign commerce, as charged in the indictment;
>
> Third, that the Defendant engaged in a course of conduct with the intent to harass or cause substantial emotional distress to Linda Mari Arnaud; and
>
> Fourth, that as a result of that course of conduct, Linda Mari Arnaud experienced substantial emotional distress.

Jury Instructions, Doc. 715, p. 14.

Ms. Arnaud testified that during the time period alleged in the indictment, she was residing in Connecticut while Shepard was residing in Arizona; specifically, Ms. Arnaud testified as to recognizing the return addresses of Shepard's mailings and caller identification ("caller id") information. TR 1/18/12, p. 65.

Additionally, Ms. Arnaud testified that she received emails from Shepard, both before and within the time alleged in the indictment. For example, Ms. Arnaud testified that, in approximately August 2009, she received an email from Shepard that referenced a shooting in a fitness club in Pennsylvania.[6] *Id.* at 92-93. Indeed, the government introduced multiple emails sent by Shepard to Ms. Arnaud between August 6, 2009, and April, 13, 2010,

---

[5]On July 28, 2011, the reference to intimidation in Count One was stricken.

[6]FBI Special Agent Tony Taylor testified that a document entitled fitness club killer, or something like that, was found on Shepard's computer. TR 1/19/12, p. 83.

1 establishing a course of conduct by Shepard.

2 Ms. Arnaud's testimony as to the frequency and content of the communications from
3 Shepard established that Shepard intended to harass Ms. Arnaud. This testimony was
4 corroborated by the testimony of FBI Special Agent Tony Taylor ("Agent Taylor") who
5 testified as to the items found in a search of Shepard's residence. These items included a
6 "Mari folder" found in Shepard's bedroom, *id.* at 222, and items retrieved from Shepard's
7 computers. Agent Taylor discussed some of the items at trial, e.g., photographs of Ms.
8 Arnaud's sister-in-law (Linda Arnaud), TR 1/19/12, pp. 33-34, receipts for ordering
9 photographs in a different name, *id.* at 34-35, handwritten notes that appeared to document
10 efforts to track down Ms. Arnaud, *id.* at 36, documents regarding Ms. Arnaud's history, *id.*,
11 at 37- 40, a map of where Ms. Arnaud's parents reside, *id.* at 43, a document in which
12 Shepard acknowledged that Shepard had grabbed Ms. Arnaud violently, had been verbally
13 abusive to Ms. Arnaud, and had stalked Ms. Arnaud, *id.* at 53, a document in which Shepard
14 discusses Ms. Arnaud's anger towards Shepard, a document in which Shepard discusses Ms.
15 Arnaud's emotional distress and mental anguish (including Ms. Arnaud suing him for the
16 conduct and Shepard admitting that he "spooked" Ms. Arnaud), *id.* at 147, a document in
17 which Ms. Arnaud requests Shepard to not contact her, *id.* at 151, and a map of West
18 Hartford, Connecticut, *id.* at 56-57.

19 Ms. Arnaud also testified as to the disruption of her life, emotional impact, and fear
20 that resulted from Shepard's conduct. For example, Ms. Arnaud testified that she took the
21 email regarding the Pennsylvania shooting as what Shepard intended to do to her, viewed it
22 as a threat to her, and became terrified. TR 1/18/12, p. 92-93. This was corroborated by
23 Officer Michael who testified that, when he first met Ms. Arnaud on February 8, 2010, it
24 appeared that she had been through a lot and appeared scared.[7] *Id.* at 184. Similarly, FBI
25 Agent Erin Leonard testified that, when she met with Ms. Arnaud in April of 2010, Ms.

---

[7] The Court notes that Officer Michael also testified as to Ms. Arnaud's emotional state during subsequent meetings.

Arnaud was terrified and seemed to be exhausted. *Id.* at 203.

The defense seeks to distinguish between recognizing that one's conduct may be felt by another to be stalking or harassment and intending a recipient to feel that way, asserts that evidence outside of the charged time period should not be considered in determining whether sufficient evidence was presented, and argues that evidence of Shepard's obsession does not show harassment. However, the defense fails to acknowledge that such evidence may be viewed by a jury as circumstantial evidence of elements of the offenses.

Based on the evidence presented to the jury, which the Court has briefly summarized, and viewing the evidence in the light most favorable to the prosecution, the Court finds that a rational juror could have concluded that the elements of Count I were proved beyond a reasonable doubt.

In Count Two, Shepard was charged as follows:

> On or about February 2007, MOSES ANTONIO SHEPARD traveled from Tucson, in the District of Arizona, in interstate or foreign commerce, with the intent to harass [] Linda Mari Arnaud; to wit, MOSES ANTONIO SHEPARD traveled to West Hartford, Connecticut, in attempt to have contact with Linda Mari Arnaud, and did attempt to contact Linda Mari Arnaud while in West Hartford, Connecticut, and in the course of and as a result of such travel MOSES ANTONIO SHEPARD caused substantial emotional distress to Linda Mari Arnaud, in violation of Title 18, United States Code, Sections 2261A(1) and 2261(b)(5).

Indictment, Doc. 22, p. 2.[8] As the jury was instructed, the elements of interstate stalking as alleged in Count Two requires proof beyond a reasonable doubt of the following elements:

> First, that the Defendant traveled in interstate or foreign commerce as charged in the indictment;
>
> Second, that the Defendant traveled in interstate or foreign commerce with the intent to harass Linda Mari Arnaud; and
>
> Third, that in the course of or as a result of such travel, Linda Mari Arnaud experienced substantial emotional distress.

Jury Instructions, Doc. 715, p. 15.

Ms. Arnaud testified about receiving voice messages from Shepard in early February of 2007 in which Shepard stated that he was in West Hartford, Connecticut, to meet with her;

---

[8] On July 28, 2011, the reference to intimidation in Count Two was stricken.

- 6 -

Ms. Arnaud's caller identification information indicated that the calls came from businesses in West Hartford, Connecticut. TR 1/18/12, p. 67-68.

Agent Taylor testified that, included within the Mari folder, were two receipts from the Whole Foods Market in West Hartford, Connecticut, on February 4th, 2007, and two receipts from an Exxon in West Hartford, Connecticut. TR 1/19/12, pp. 61-62. Agent Taylor also testified regarding a February 21, 2007, letter found on one of Shepard's computers acknowledged that Shepard had traveled to West Hartford, Connecticut, from February 4th through 6th of that year. *Id.*, at 117-18. Agent Taylor further testified that the letter described Ms. Arnaud's home, indicated that Shepard had waited for Ms. Arnaud most of February 4th, 5th and 6th, and included sexually explicit materials. *Id.* at 118. Agent Taylor also testified regarding a February 5th, 2007, entry in which Shepard discusses waiting at the West Hartford Inn and the Whole Foods in West Hartford when he was there to see Ms. Arnaud. *Id.* at 120. Agent Taylor testified about a document on the computer that discussed the drive between Tucson, Arizona, and West Hartford, Connecticut (i.e., amount of time, partial directions) and included information regarding the Whole Foods in West Hartford (e.g., telephone number, price for flowers).[9] *Id.* at 122-23.

Further, as discussed as to Count I, evidence was presented (e.g., letters and documents from Shepard's computers) to show that Shepard intended to harass Ms. Arnaud and was aware that his conduct did in fact harass Ms. Arnaud. Similarly, as discussed as to Count I, evidence was presented as to the substantial emotional distress suffered by Ms. Arnaud as a result of Shepard's conduct. For example, Ms. Arnaud testified that she was terrified for her safety upon learning that Shepard was in her town and was waiting for her around the corner from her residence. TR 1/18/12, p. 68.

Based on the evidence presented to the jury, of which the Court has briefly

---

[9]Agent Taylor also testified regarding a letter or series of letters from Shepard's computer in which an October 2008 document stated that Shepard had tried to meet with Ms. Arnaud and had driven by her home and that Shepard had returned to Ms. Arnaud's old apartment.

summarized, and viewing the evidence in the light most favorable to the prosecution, the Court finds that a rational juror could have concluded that the elements of Count II were proved beyond a reasonable doubt.

Shepard also argues Ms. Arnaud was a public figure and, therefore, Shepard's writings were protected by the First Amendment. *See e.g., United States v. Cassidy*, 814 F.Supp.2d 574 (D.Md. 2011). Shepard argues that Ms. Arnaud voluntarily undertook to affect and assist people in health and stress reduction, offered her services to the public, and provided her services in a public place, through a community hospital and yoga studio. Ms. Arnaud testified that, although she was self-employed, she did not create a web page or advertise on the web because she was afraid of being found by Shepard. TR 1/18/12, p. 57. Further, the Court agrees with the government that, just because a yoga center at which Ms. Arnaud was to teach a workshop included Ms. Arnaud's name in an online posting, *id.*, at 57-58, Ms. Arnaud was not transformed into a public figure. Contrary to the defense's argument, the Court simply does not find that Ms. Arnaud's action in becoming a yoga instructor and massage therapist warrants a determination that she became a public figure. Indeed, while Shepard may have used some information available on the internet to locate Ms. Arnaud, evidence presented at trial established that, on many other occasions Shepard used other methods to obtain private information about Ms. Arnaud in an attempt to track down her whereabouts (e.g., receipt for investigative services, TR 1/19/12, p. 68; *id.* at 83; assistance of others, *id.* at 113). These activities are not protected free speech.

Shepard also asserts that this Court lacks jurisdiction over the charged (now convicted) offenses. "Subject-matter jurisdiction presents a threshold question in any federal question. Federal courts of limited jurisdiction have only the power to hear those cases over which Congress has conferred subject-matter jurisdiction upon them." *United States v. Baucum*, 80 F.3d 539, 541 (D.C.Cir. 1996). "When a federal court exercises its power under a presumptively valid federal statute, it acts within its subject-matter jurisdiction pursuant to [18 U.S.C. § 3231]. *Id.* The statute under which Shepard has been convicted is presumptively valid and Shepard has not presented any basis for this Court to conclude otherwise. Moreover, to any

extent that Shepard is asserting that this Court lacks venue over the offenses, the evidence presented at trial established that at least part of Shepard's conduct occurred in Arizona, Shepard's computer and the "Mari" file were seized from Shepard's residence in Arizona, and Shepard traveled to Connecticut from Arizona. The Court finds venue is appropriate in this district. *See e.g.* 22 C.J.S. Criminal Law § 231.

Shepard also argues, in supplemental and reply documents, that the jury was not a jury of his peers because no peer of Shepard's would have convicted Shepard on the evidence presented, there is nothing intrinsically harassing about sending email, the entirety of his emails were not read to the jury and that the jury did not deliberate long enough to have read all of the emails (therefore, the jury must have based its decision on allegations and conjecture), the emails more accurately are characterized as reflecting unrequited love rather than stalking, and the jury was not informed of the highly prejudicial nature of the information that deceived them. Shepard also argues facts that contradict the government's case and facts that would be presented at a retrial or dispute the government's case/theory. However, as this Court has found, sufficient evidence such that a rational juror could have concluded that the elements of the offenses were proved beyond a reasonable doubt was presented to the jury. Although the arguments made by Shepard now are such that they may have disputed the evidence or the admissibility of the evidence presented at trial, the existence of such arguments in favor of the defense does not diminish the sufficiency of the evidence (including direct, circumstantial, and reasonable inference drawn therefrom), viewed in the light most favorable to the prosecution, such that a rational juror could have concluded that the elements of the offenses were proved beyond a reasonable doubt. Further, Shepard declined to participate in the trial and cannot now legitimately complain that the jury was deceived by the evidence presented by the government.

*Motion for New Trial*

Fed.R.Crim.P. 33 allows the Court to order a new trial "if the interest of justice so requires." Although a court's power to grant a motion for a new trial is "much broader than

- 9 -

its power to grant a motion for judgment of acquittal," it may not grant the motion unless it finds that "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict" such that "a serious miscarriage of justice may have occurred." *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992). Moreover, the "burden of justifying a new trial rests with the defendant." *United States v. Saya*, 101 F.Supp.2d 1304, 1307 (D.Haw. 1999), *citing United States v. Shaffer*, 789 F.2d 682, 687 (9th Cir. 1986). However, the government bears the burden of proving that any constitutional errors are harmless beyond a reasonable doubt. *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989).

The defense argues that multiple instances of the admission of hearsay testimony warrants a new trial. Included in the general examples are also assertions that testimony included statements that Ms. Ms. Arnaud was stalked and was referred to as a victim, insufficient foundation was provided, and irrelevant testimony was given. As acknowledged by the defense, the instances of purported hearsay testimony and other errors were not objected to during trial. The Court, therefore, reviews the admission of such evidence under a plain error analysis. *See United States v. Rogers*, 769 F.2d 1418, 1425 (9th Cir. 1985) (evidentiary rulings are not reviewed, "in the absence of a timely objection, unless admission of the evidence affect substantial rights of the accused"); *see also United States v. Fabricant*, 2009 WL 3270937 (C.D.Cal. 2009), *citing United States v. Barry*, 627 F.2d 193, 199 (9th Cir. 1990) ("A Defendant did not object to introduction of the [evidence] during trial, Defendant only now succeed on his Motion for a New Trial based on the [evidence] if he can show that the admission of the [evidence] by the Court was 'plain error.'").

"The plain-error standard of review dictates that reversal is warranted only where there has been (1) error; (2) that is plain; (3) that affects substantial rights; and (4) where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pelisamen*, 641 F.3d 399, 404 (9th Cir. 2011), *citations omitted*. Furthermore, a defendant generally "bears the burden of persuasion on the third prong (affects substantial rights) of the plain-error test." *Id*.

In this case, the defense has generally referred to hearsay statements without specification. Moreover, it appears that the alleged instances of the admission of hearsay were either not hearsay or admissible as hearsay exceptions (e.g., Fed.R.Evid. 801(c)(2) (truth of the matter asserted); Fed.R.Evid. 803(9) (present sense impression); Fed.R.Evid. 803(2) (excited utterance); Fed.R.Evid. 803(3) (then-existing condition). The Court finds the alleged admission of hearsay does not justify a new trial.

Furthermore, the defense's argument that testimony that Ms. Arnaud was a victim and whether there was harassment and/or stalking overtook the jury's role is without merit. The Ninth Circuit has stated:

> As originally envisioned, Federal Rule of Evidence 704 was intended to "specifically abolish[ ]" the prohibition "against allowing witnesses to express opinions upon ultimate issues." Fed.R.Evid. 704 advisory committee's notes. The rule, as adopted, consisted entirely of a version of the current subdivision (a), which deems "otherwise admissible" opinion testimony "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a); Wright & Gold, Federal Practice and Procedure: Evidence § 6281 (1997). In abandoning the general rule against "ultimate issue" testimony, the Advisory Committee dismissed as "empty rhetoric" the rationale that ultimate issue testimony would "usurp [ ] the province of the jury." Adv. Ctte. Note to Rule 704 (citation omitted).

*United States v. Campos*, 217 F.3d 707, 710 (9th Cir. 2000). Although such testimony may still be inadmissible for other reasons, *see e.g.,* Fed.R.Evid. 403, Fed.R.Evid. 701, *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) (lay witness not qualified to testify); *Salas v. Carpenter*, 980 F.2d 299, 304-05 (5th Cir. 1992) (testimony in form of opinion not necessary because jury is equally well positioned to draw conclusion), the Court finds the defense has not established the admission of the opinion testimony constitutes plain error justifying a new trial.

Similarly, the defense has not established any plain error based on insufficient foundation or irrelevant testimony. Indeed, the Court agrees with the government that Agent Taylor's testimony placed certain items of evidence into context. The agent was available for cross-examination as to why certain evidence was considered significant or to question the context of the statement. The Court finds the defense has not established that the admission of such evidence warrants a new trial.

The defense asserts that evidence of other acts took more than 75% of the trial and was presented without any cautionary instructions. The Court declines to reconsider its prior rulings regarding the other act evidence. *See* Doc. 216 (magistrate judge denying Motion to Preclude All Prior Acts Between 1992 and 2005 and Outside Two-Count Indictment); Doc. 631 (this Court's determination that the magistrate judge's ruling was not clearly erroneous or contrary to law); Doc. 186 (magistrate judge denying Motion to Eliminate all Prior Events-Acts as having been withdrawn).[10] Further, the jury was advised that Shepard was not on trial for any conduct or offense not charge in the indictment, *see* Jury Instructions, Doc. 715, p, 10, and that other act evidence was to be considered only for its bearing on Shepard's intent, motive, opportunity, preparation, plan, knowledge, or identity, *id*. at 12.

Shepard also asserts, *see e.g.,* Notice of Pro Se Analysis of Transcripts Sent by Court Re: Acquittal or New Trial (Doc. 805), that a new trial is warranted because he did not receive some items to be used for trial until after the trial was complete.[11] For example, Shepard asserts that he did not receive the second phase of the computer forensic investigator work until February 25, 2012. However, the magistrate judge ordered the approval of a forensic computer expert on August 23, 2012. Shepard has not shown that he sought such approval prior to that time. Similarly, Shepard asserts that he received telephone company

---

[10]Indeed, the Court notes that the Ninth Circuit has stated that "[e]vidence should not be considered 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993), *internal quotation marks, alteration, and citation omitted*. "The policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *Id., internal quotation marks and citation omitted*. "Evidence is "inextricably intertwined" if it "constitutes a part of the transaction that serves as the basis for the criminal charge" or "was necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002), *quoting United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).

[11]To any extent Shepard is arguing that a new trial is warranted based on his denied request to continue the trial, the Court declines to reconsider this Order.

records after the trial. Although this case had been pending since April 13, 2010, Shepard had not sought any subpoenas duces tecum prior to the magistrate judge advising Shepard of the showing needed for the issuance of subpoenas duces tecum in the November 15, 2011, minute entry. Indeed, Shepard did not seek the subpoenas duces tecum until December 22, 2011, less than one month prior to the January 17, 2012, trial. The Court does not find this warrants a new trial.

*Faretta Rights*[12]

Shepard also asserts that an acquittal or new trial is appropriate based on a violation of his *Faretta* rights. *See Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2530 n. 46, 45 L.Ed.2d 562 (1975). Shepard appears to assert that advisory/standby counsel should have been required to assist him in whatever capacity Shepard deemed appropriate. However, as the Court's prior orders made clear, assistance provided by advisory/standby counsel is subject to ethical duties. *See e.g.*, February 17, 2012, Order, Doc. 744. In other words, it would not have been appropriate for advisory/standby counsel to assist in a defense for which there was not a good faith basis in law and fact. *See e.g.*, Ariz.Sup.Ct.Rule 42, E.R. 3.1, 3.3, 3.4, 4.1. Further, Shepard's apparent expectation that advisory/standby counsel should have, either on their own or upon the Court's order, provided a computer or been available at any time Shepard chose, fails to acknowledge that counsel was appointed to advise and stand by, not to be a delivery person or to provide a sounding board for repetitive or frivolous factual or legal arguments.

Shepard also asserts that the Court should have *sua sponte* terminated his right to

---

[12]Shepard also asserts that advisory/standby counsel were not prepared to proceed at trial. Shepard having invoked his right to represent himself, he did not have a right to hybrid representation. 9 Fed.Proc., L.Ed. § 22:622. Shepard cannot, therefore, assert a claim of ineffective assistance of counsel. *Williams v. Stewart*, 441 F.3d 1030, 1047 n. 6 (9th Cir. 2006). Further, because Shepard did not request that standby counsel step in to represent him during trial, no prejudice can be shown by counsel's alleged failure to be prepared to proceed.

represent himself. During a status conference prior to trial, the Court again advised Shepard of the dangers and disadvantages of representing himself. TR, 1/12/12, p. 51-53. At the continued status conference, the Court made clear to Shepard that counsel would be available to advise and assist him, but that Shepard was representing himself. TR 1/17/12, p. 30-38. While the Court informed the parties that it would permit participation by advisory/standby counsel, the Court made it clear to Shepard that the level of participation was within the discretion of advisory/standby counsel in light of ethical concerns. *Id*. at 58. At no time did Shepard provide any indication that he did not choose to continue to represent himself or that he was not competent to continue to waive his right to counsel. The Court does not find this a basis for acquittal or a new trial.

Accordingly, IT IS ORDERED:

1. The Motion Renewing Motion for Judgment of Acquittal (Doc. 737) is DENIED.

2. The Motion for New Trial (Doc. 738) is DENIED.

3. The Motion to Arrest Judgement Pursuant to Rule 34(a)(102) F.R.C.P., Post Trial (Doc. 763), which the Court has treated as a Supplement to the Motion Renewing Motion for Judgment of Acquittal, is DENIED.

4. To the extent that any supplements or other documents related to the Motion Renewing Motion for Judgment of Acquittal or the Motion for New Trial were docketed as independent motions (Docs. 794, 799), they are DENIED.

DATED this 4th day of May, 2012.

_____
Cindy K. Jorgenson
United States District Judge